United States Court of Appeals,

Eleventh Circuit.

No. 96-4398.

Munir A. MADIWALE, Frances M. Madiwale, Tyyne Mary Hogan, Plaintiffs-Appellees,

v.

Joyce SAVAIKO, Defendant-Appellant.

July 25, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-6130.-CV-DTKH), Daniel T.K. Hurley, Judge.

Before COX and BARKETT, Circuit Judges, and SMITH[*], Senior Circuit Judge.

BARKETT, Circuit Judge:

Joyce Savaiko appeals from the district court's denial of her motion for summary judgment on the issue of qualified immunity in a suit brought pursuant to 42 U.S.C. § 1983 by Tyyne Hogan, Munir Madiwale, and Frances Madiwale. In the lawsuit, Hogan alleged that Savaiko, a police officer, violated her Fourth Amendment rights by arresting her without arguable probable cause for allegedly having failed to report child abuse in violation of Florida Statute § 415.513, having made allegedly false reports to law enforcement authorities in violation of Florida Statute § 837.05, and allegedly being an accessory after the fact in violation of Florida Statute § 777.03. The Madiwales assert that Savaiko violated their Fourth Amendment rights by applying for a search warrant and executing it upon their residence and place of work, likewise without probable cause. Additionally, Munir Madiwale, a physician, alleges that Savaiko violated his constitutional rights by reporting him to a professional oversight committee.

Joyce Savaiko, working for the police department in Cooper City, Florida, first came in contact with Hogan and the Madiwales when she went to the Retreat Ranch, a state-licensed residential rehabilitative center for troubled boys, to investigate a report of child abuse. The Ranch was owned by the Madiwales and was located on the property upon which the Madiwales also had

[*]Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

their home. The Ranch employed Hogan as its resident director.

In the course of speaking to the children at the Retreat Ranch, Savaiko discovered that one of the residents had alleged that he was sexually attacked by other boys at the Retreat Ranch on February 5, 1991. It is this incident upon which the application for the search warrants and the warrantless arrest were based. The state's attorney declined to press any charges against Hogan or the Madiwales. The Madiwales and Hogan subsequently sued Savaiko pursuant to 42 U.S.C. § 1983, and Savaiko moved for summary judgment, asserting that she was entitled to qualified immunity on all counts. The district court denied Savaiko's motion.

Discussion

A summary judgment denying qualified immunity can be appealed immediately. *Behrens v. Pelletier,* --- U.S. ----, ----, ----, 116 S.Ct. 834, 839, 842, 133 L.Ed.2d 773 (1996). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In our de novo review of a summary judgment order, we must take the evidence in the light most favorable to the non-moving party. *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996).

The applicable law provides that government agents engaged in discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The fundamental inquiry in a qualified immunity case is whether "a reasonable official would understand that what he is doing violates [a federal constitutional or statutory] right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). However, "this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640, 107 S.Ct. at 3039 (citations omitted). As the Supreme Court recently emphasized, "general statements of the law are not inherently incapable of giving fair and clear warning, and ... a general constitutional rule already identified in the decisional law may

apply with obvious clarity to the specific conduct in question...." *United States v. Lanier,* --- U.S. ----, ----, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997).[1]  The qualified immunity inquiry, then, must establish first, whether the defendant government official was performing a discretionary function and, second, whether, in doing so, the defendant should reasonably have known that the action violated an individual's clearly established federal statutory or constitutional rights.  It is not disputed that Savaiko was acting within her discretionary authority during the incidents involved in this case.  Thus, it is only the second part of the inquiry that is at issue here.  Hogan and the Madiwales assert multiple violations, which we treat in turn.

1) Arrest of Hogan

There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment.  *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990); *Herren v. Bowyer,* 850 F.2d 1543 (11th Cir.1988).  Probable cause exists if "the facts and the circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Jimenez,* 780 F.2d 975, 978 (11th Cir.1986).  However, when considering qualified immunity, the issue is

> not probable cause in fact, but arguable probable cause.  Actual probable cause is not necessary for an arrest to be objectively reasonable.  Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable.

*Von Stein,* 904 F.2d at 579 (citations, internal ellipses, and internal quotations omitted).  Thus, in applying the qualified immunity test in the context of a claim of an unlawful arrest, "we must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants would have believed that probable cause existed to arrest Plaintiff...." *Id.*

a) Failure to Report Child Abuse

---

[1]*Lanier* considered 18 U.S.C. § 242, the criminal counterpart to 48 U.S.C. § 1983.  The Court in *Lanier* made clear that suits proceeding under both statutes make use of the exact same inquiry in order to determine whether, in the light of pre-existing law, the unlawfulness of an official's action is apparent.  --- U.S. at ----, ----, 117 S.Ct. at 1227, 1228.

Savaiko arrested Hogan for failing to report the alleged child abuse of Anthony Casales on February 5, 1991, in violation of Florida Statutes §§ 415.504 and 415.513. Section 415.504 states in relevant part:

> (1) Any person ... who knows, or has reasonable cause to suspect, that a child is an abused, abandoned, or neglected child shall report such knowledge or suspicion to the department in the matter prescribed in subsection (2).

> (2)(a) Each report of known or suspected child abuse or neglect pursuant to this section ... shall be made immediately to the department's central abuse hotline on the single statewide toll-free telephone number....

Section 415.513 makes failure to comply a misdemeanor in the second degree.

The uncontested facts reveal that Savaiko had been informed prior to arresting Hogan that Anthony Casales and his therapist called the HRS hotline to report the alleged February 5th incident. Savaiko stated in her deposition that she was given this information by both Anthony Casales and Tyyne Hogan. [Savaiko Depo., Vol. I, at 113, 118]. There is no evidence in the record disputing that the report to the hotline had been made.[2] Most importantly, in addition to the telephone calls to the hotline, Hogan also submitted a written report regarding the incident to the Miami HRS office on April 16, 1991, [Savaiko Depo., Vol. I, Plaintiff's Exb. # 5] which Savaiko acknowledged she received on May 3, 1991 [Savaiko Depo., Vol. I, at 135], seven days prior to arresting Hogan. Thus, all of the evidence known to Savaiko indicated that the incident had been reported to the central abuse hotline and that Hogan had additionally submitted a written report to the Miami HRS office.

In this appeal, Savaiko does not dispute that the phone calls to the HRS were made. Rather, she argues that notwithstanding the plain language of the statute, she had arguable probable cause to arrest because she was told by an HRS hotline manager that callers reporting child-on-child abuse at residential facilities were instructed to contact local law enforcement and the local HRS office. [R3-109-12]. Florida Statute § 415.504, however, nowhere requires abuse to be reported to local law enforcement or to a local HRS office. Rather, the statute only requires that abuse be reported

---

[2]In her notes Savaiko wrote that the information given to her by an HRS employee regarding whether the February 5th incident had been reported was "not conclusive." [R3-109-12] In her deposition, Savaiko explained that, possibly prior to the arrest, she learned the hotline records of February 5 had been shredded by the HRS. [Savaiko Depo., Vol. I at 131; Vol. II, at 56].

to the HRS hotline. Here, where Hogan and her employees performed the acts required by §
415.504, and where it is uncontested that Savaiko had no reason to doubt that those acts had been
performed, Savaiko had no arguable probable cause to arrest Hogan pursuant to that statute.

b) Accessory After the Fact

Savaiko also arrested Hogan for violating Florida Statute § 777.03, which at the time of the
arrest stated in relevant part, "Whoever ... maintains or assists the principal or accessory before the
fact, or gives the offender any other aid, knowing that he had committed a felony or been accessory
thereto before the fact, with intent that he shall avoid or escape detection, arrest, trial, or punishment,
shall be deemed an accessory after the fact, and shall be guilty of a felony of the third degree...."
(emphasis added).

Nowhere in her briefs to this court does Savaiko explain how arguable probable cause to
arrest could have existed under this statute. She does not indicate who Hogan was allegedly helping,
or what crime that person allegedly committed. Also, we cannot determine whether the underlying
crime was a misdemeanor, which would fall outside the scope of the plain language of § 777.03.
This record makes clear that there was no arguable probable cause to arrest Hogan on this charge.

c) Making False Reports

Finally, Savaiko charged Hogan pursuant to Florida Statute § 837.05, which states,
"Whoever knowingly gives false information to any law enforcement officer concerning the alleged
commission of any crime is guilty of a misdemeanor of the first degree...." Savaiko claims that, at
the time of Hogan's arrest, she reasonably thought that Hogan had lied to her regarding whether the
calls reporting child abuse had been made to the HRS, and regarding whether the Retreat Ranch had
sent the allegedly abused child to a doctor specializing in treating sexual assault. However, Savaiko
points to no evidence to support a reasonable belief that Hogan was intentionally lying when she
claimed that the phone calls were made. Indeed, as we described earlier, the evidence is to the
contrary, since both Hogan and Casales stated that the February 5th incident was reported to the
HRS, and there was no information from the HRS or otherwise that would lead a reasonable police
officer to disbelieve the information. The only other alleged false report was that Hogan "lied"

about whether Casales was sent to see a doctor specializing in treating sexual assault.[3] Even if Hogan did lie about this, Savaiko does not show how this relates to the crime charged. A violation of the relevant statute occurs only when someone lies to a police officer "concerning the alleged commission of any crime." Savaiko does not indicate what crime Hogan might have been "lying" about. Furthermore, the record does not support a charge that Hogan "knowingly" gave false information to Savaiko. While the record does support Savaiko's assertion that Hogan incorrectly stated that the doctor Casales had seen was a specialist, [Savaiko Depo., Vol. I, at 123] Savaiko points to nothing in the record indicating that, at the time of the arrest, she had reason to think that Hogan was aware that the information was false. Indeed, the record indicates that Savaiko saw that Hogan was reading from notes prepared by another Retreat Ranch employee. [Savaiko Depo., Vol. I, at 117, 123] Therefore, in accordance with *Von Stein,* we cannot state that Savaiko had arguable probable cause to arrest Hogan pursuant to Florida Statute § 837.05.

For the foregoing reasons, we affirm the district court's denial of Savaiko's motion for summary judgment as it relates to the arrest of Hogan.

2) Search Warrants

In conjunction with this same incident, Savaiko obtained and executed two search warrants.[4] One warrant was made out for the "administrative offices of the Retreat Ranch" which in fact was the home of the Madiwales, and the other was made out for "a dwelling known as the Retreat Ranch."[5] The Madiwales claim that Savaiko misrepresented and omitted material facts in her

---

[3]It seems that Casales was taken to see a doctor, recommended by Medicaid, who apparently did not specialize in treating sexual abuse. [Savaiko Depo., Vol. I, at 119-120; Hogan Depo. at 68].

[4]Savaiko claimed in her search warrant affidavits that the laws violated were Florida Statutes § 794.023, sexual battery by multiple perpetrators; § 794.011(2), sexual battery on a child under twelve years of age by an offender under 18 years of age; § 777.03, accessory after the fact; § 777.011, aiding and abetting commission of a crime; § 415.513, failing to report child abuse or neglect; § 827.05, negligent treatment of children.

[5]There was some discussion at oral argument, and some mention in the magistrate judge's report, regarding whether the search warrants covered the residence of the Madiwales. The Madiwales do not brief to any extent whether the warrant was properly made out to cover their residence, and therefore we do not consider that claim.

affidavits to obtain the warrants, thereby violating their Fourth Amendment rights.

In *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), the Supreme Court held that a search warrant is void under the Fourth Amendment if the affidavit supporting the warrant contains "deliberate falsity or ... reckless disregard" for the truth. However, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause[,]" then the warrant is valid. *Id.* Negligent or innocent mistakes do not violate the Fourth Amendment. *Id.*

The reasoning in *Franks* also applies to information omitted from warrant affidavits. Thus, a warrant affidavit violates the Fourth Amendment when it contains omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit." *United States v. Martin,* 615 F.2d 318, 329 (5th Cir.1980).[6] A party need not show by direct evidence that the affiant makes an omission recklessly. Rather, it "is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself." *Id.* Omissions that are not reckless, but are instead negligent, *id.,* or insignificant and immaterial, will not invalidate a warrant. *United States v. Reid,* 69 F.3d 1109, 1114 (11th Cir.1995), *cert. denied sub. nom., Miller v. United States,* --- U.S. ----, 116 S.Ct. 1866, 134 L.Ed.2d 964 (1996). Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause. *United States v. Jenkins,* 901 F.2d 1075, 1080 (11th Cir.1990), *cert. denied,* 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 216 (1990). For example, in *United States v. Haimowitz,* 706 F.2d 1549, 1557 (11th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984), this court held that, where unsavory information relating to the background of an informant was omitted from an affidavit, the warrant was still valid, due in part to the "firsthand character" of the statements coupled with independent corroboration of the information by another person.

---

[6]All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

Finally, we note that this circuit has previously reasoned that an officer would not be entitled to qualified immunity when "the facts omitted ... were ... so clearly material that every reasonable law officer would have known that their omission would lead to a search in violation of federal law." *Haygood v. Johnson,* 70 F.3d 92, 95 (11th Cir.1995) *cert. denied sub. nom., Haygood v. Savage,* --- U.S. ----, 117 S.Ct. 359, 136 L.Ed.2d 251 (1996).

In this case, Savaiko stated in her affidavit supporting the warrant to search the Madiwales' residence that "these sexual batteries went unreported to law enforcement and H.R.S." As we have discussed above, it is undisputed that prior to swearing out the warrant affidavit, Savaiko was informed that the February 5th incident had been reported to the H.R.S., both by means of the hotline and by means of a written report, and it is further undisputed that Savaiko received no information from the HRS contesting that the hotline calls had been made. These facts are directly relevant as to whether the alleged abuse was properly reported in accordance with Florida Statute § 415.513. Had Savaiko premised the search warrants solely on the alleged violation of the reporting statute, for the reasons discussed earlier, obtaining the warrants would have violated clearly established law.

However, Savaiko also premised the search warrants on violations of other statutes. Specifically, the warrant affidavits include alleged violations of § 794.023, which prohibits sexual battery by multiple perpetrators, and § 794.011(2), which prohibits sexual battery on a child under twelve years of age by an offender under eighteen years of age. The misstatement and omission concerning whether the February 5th abuse was reported is not relevant to the existence of probable cause to believe that these other two crimes had been committed. The warrant affidavits state that Savaiko had two sworn taped statements that a sexual battery upon a fifteen year old child had occurred at the Ranch and that other sexual batteries upon children under the age of twelve had occurred, all perpetrated by residents of the Ranch. The affidavits also stated that Savaiko had sworn statements by two former Ranch employees that reports documenting the abuse and the identities of the perpetrators were kept at the Ranch building and the residence. These facts are adequate to establish arguable probable cause that Florida Statutes § 794.023 and § 794.011(2) had

been violated. Consequently, Savaiko is entitled to qualified immunity as to the search warrant claims.

3) Report to Professional Oversight Committee

Savaiko also reported Dr. Munir Madiwale to the state Department of Professional Regulation (DPR) for over-medicating a child at the Retreat Ranch. Munir Madiwale alleges that, by so reporting him, Savaiko violated a clearly established federal constitutional or statutory right of his. However, Madiwale does not explain in his briefs or pleadings what right of his was violated. Plaintiff's counsel did state at oral argument that Savaiko's action violated due process pursuant the 14th Amendment, but this claim, as argued by Madiwale, is nonspecific. Thus, we cannot say that Savaiko violated clearly established law by reporting Madiwale to the DPR, and she is therefore entitled to qualified immunity on this issue.

Conclusion

We AFFIRM the district court's denial of qualified immunity to Savaiko for the arrest, but REVERSE the district court's denial of qualified immunity to Savaiko for the searches and for reporting Munir Madiwale to the professional oversight committee, and REMAND this case to the district court for proceedings consistent with this decision.