**Celeste Fraser DELGADO Plaintiff,**

v.

**MIAMI–DADE COUNTY, et al., Defendants.**

No. 05–23061–CIV–MOORE, 05–23061–CIV–GARBER.

United States District Court, S.D. Florida.

Oct. 9, 2006.

Benjamin Samuel Waxman, Robbins Tunkey Ross Amsel Raben et al., Miami, FL, for Plaintiff.

Jeffrey Paul Ehrlich, Dade County Attorney's Office, Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT OFFICER RILEY'S MOTION TO DISMISS

MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant Officer David Riley's Motion to Dismiss the Second Amended Complaint (DE # 35).

UPON CONSIDERATION of the motion, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order:

### I. BACKGROUND

Plaintiff CELESTE FRASER DELGADO ("Plaintiff" or "Delgado") was a reporter with the *Miami New Times* when she was arrested by Miami–Dade Police Officers on November 20, 2003, during protests surrounding the Free Trade Area of the Americas ("FTAA") summit held in Miami, Florida, the week of November 17–21, 2003. *See* 2d Am. Compl. ¶¶ 1, 11. The summit attendees included trade ministers and business leaders from over 30 countries. *See id.* ¶ 11. The majority of the events surrounding the summit and the accompanying protests took place in downtown Miami. *See id.* ¶ 12. Due to the large number of people expected in the downtown area, the City of Miami Police Department requested assistance from other law enforcement agencies, including the Miami–Dade Police Department ("MDPD"). *See id.* ¶ 13.

At approximately 4:30 p.m. on November 20, 2003, Delgado left the office of the *Miami New Times* at 2800 Biscayne Boulevard with her press identification clipped to her jacket. *See id.* ¶ 14. After attempting to walk south towards downtown, she was turned around by police officers advancing northward and spanning the entire width of the street. *See id.* ¶ 15. Delgado complied with the police's orders to turn around and began walking north. *See id.* ¶ 16.

She decided to go to the Convergence Center at North Miami Avenue and Northeast 23rd Street, a headquarters for FTAA protesters, and, at some point, moved out of the way of the advancing police officers. *See id.* Upon reaching North Miami Avenue and Northeast 14th Street, Plaintiff encountered another band of police officers. *See id.* ¶ 17. She then joined a group of demonstrators and they continued north on North Miami Avenue towards the Convergence Center. *See id.* At or near the intersection of North Miami Avenue and 20th Street, Delgado and the protesters encountered an MDPD squad car traveling southbound on North Miami Avenue with its doors open. *See id.* ¶ 18. The car then crossed the northbound lane, drove onto the curb alongside that lane,

and came to halt in front of Delgado and the protesters. *See id.* Four unidentified, male MDPD officers ("Doe 1," "Doe 2," "Doe 3," and "Doe 4") exited the car and yelled, "Get on the ground," to Delgado and the group of protesters. *See id.* Delgado and the protesters immediately dropped to the ground and Delgado announced that she was a reporter with the *Miami New Times. See id.* ¶¶ 18–19. One of the officers (Doe 1), without examining the credentials, told Delgado to "put [her] hands behind her back." *Id.* ¶ 19. Delgado removed the backpack she was wearing on her back and placed her hands together behind her. *See id.* Doe 1 then handcuffed Delgado with plastic ties. *See id.* Delgado lied face down on the ground for at least an hour and a half. *See id.* ¶ 20.

Another unidentified police officer ("Doe 5") then frisked Delgado. *See id.* Delgado told Officer Doe 5 that she was a member of the press and that her credentials were in her backpack. *See id.* Next, Officer Doe 5 assured Delgado that her belongings would be safeguarded and examined her driver's license and business cards. *See id.* Delgado was then loaded by MDPD officers onto a prisoner transport vehicle. *See id.* The vehicle proceeded to a parking lot on Biscayne Boulevard south of the Freedom Tower (Northeast 6th Street). There, several police officers agreed that the arrest affidavits of Delgado and the protesters should state that they were arrested for failure to obey a lawful command in violation of Florida Statutes section 316.0723 and resisting without violence in violation of Florida Statutes section 843.02. *See id.* ¶ 21. An unidentified officer ("Doe 6"), then wrote on Delgado's arrest affidavit:

> Defendant was observed in the area of NW 19th ST. and N. Miami AVE. with a group of individuals which matched description of people who were throwing rocks due to FTAA protest. Defendant

was approached and advised to stop and refused. Defendant subsequently [was] taken into custody without incident. *Id.*

Defendant RILEY signed this affidavit, though he did not write the above description of the events. *See id.* ¶ 22. Delgado was then transported to a parking garage beside State Road 112 near Northwest 22nd Avenue that served as a holding area for persons in custody. *See id.* ¶ 23. The other arrested persons, along with Delgado, were placed in a chainlink enclosure and then processed by Miami–Dade Corrections Officers. *See id.* After having complained repeatedly that her handcuffs were too tight, Delgado's plastic restraints were cut and her hands were restrained in front of her. *See id.* ¶ 24. Delgado's hands were swollen, numb, and tingly, and her boots were removed by the officers. *See id.* Plaintiff next arrived at the Turner Guilford Knight Correctional Center, where she was moved from cell to cell for around three (3) hours, and where she spent the rest of the night. *See id.* ¶ 25. The next morning, at her jail arraignment, the State of Florida dropped all charges against Delgado. *See id.* ¶ 25. She was released from jail several hours later and her backpack was not immediately returned to her. *See id.*

## II. ANALYSIS

### A. Standard of Review

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.1988). Further, the Court should not grant a motion

to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *see also South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996). Specifically, "It is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible theory." *Bowers v. Hardwick,* 478 U.S. 186, 201–02, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting) (quotations omitted); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

### B. Qualified Immunity

■ Determination of qualified immunity is a legal question, the answer dependent on the particular facts of the case. *Sheth v. Webster,* 145 F.3d 1231, 1236 (11th Cir.1998). The United States Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *McElligott v. Foley,* 182 F.3d 1248, 1254 (11th Cir.1999) ("[W]e must 'first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'"). For a right to be

"clearly established" for qualified immunity purposes, previous case law must have developed it in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law. *Sanders v. Howze,* 177 F.3d 1245 (11th Cir.1999). Whether applicable law was clearly established at the time of the challenged action is determined by reference to decisions of the United States Supreme Court, the Court of Appeals for the Eleventh Circuit or the Supreme Court of Florida. *See, e.g., Mercado v. City of Orlando,* 407 F.3d 1152, 1159 (11th Cir.2005); *Lee v. Ferraro,* 284 F.3d 1188, 1199 (11th Cir.2002); *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995).

In applying the test for qualified immunity, we must take "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The reasonableness inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. Further, "arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." *Jones v. Cannon,* 174 F.3d 1271, 1283 n. 3 (11th Cir.1999) (citing *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997)) ("As we have emphasized before, arguable probable cause is distinct from actual probable cause."), *cert. denied,* 525 U.S. 870, 119 S.Ct. 165, 142 L.Ed.2d 135 (1998); *id.* at 1446 ("We pause at this point to reemphasize that the arguable probable cause inquiry is distinct from the actual probable cause inquiry."); *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause

but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed."); *id.* ("We have repeatedly held that because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed."); *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990) ("In determining whether qualified immunity exists, the issue is not probable cause in fact but arguable probable cause.") (internal quotation marks omitted).

### C. Officer Riley's Actions

■ Here, Officer Riley proffers that Plaintiff's claim against him (Count III of the Second Amended Complaint) for violation of her First, Fourth, and Fourteenth Amendment rights is barred by the doctrine of qualified immunity. As discussed above, a determination of qualified immunity would shield Officer Riley from any liability and cause his Motion to Dismiss to be granted. For the following reasons, the Court finds that Officer Riley's actions towards Plaintiff were reasonable, that Officer Riley's belief that arguable probable cause existed was reasonable under the circumstances, and that Officer Riley's reliance on other officers' statements in effectuating the arrest was lawful and reasonable. Thus, Officer Riley's conduct did not violate a clearly established constitutional right of which a reasonable person would have known.

The parties have, through well-reasoned and researched briefs, narrowed this complex issue for the Court. In effect, the Court's sole determination to make is whether Officer Riley's reliance on the information of his fellow officers is legitimate under the "fellow officer rule" or "collective knowledge doctrine," whether that information was reasonable considering the facts and circumstances surrounding the arrest, and, thus, whether Officer Riley is entitled to qualified immunity.

■ Plaintiff cites several cases for the proposition that if the information given to Officer Riley by his fellow police officers is flawed, then he is not entitled to qualified immunity. It is well-settled in the Eleventh Circuit that an arresting officer does not need to have personal knowledge of probable cause, but can be informed of the facts by his fellow officers. *See, e.g., United States v. Ashley,* 569 F.2d 975, 983 (5th Cir.1978).[1] As explained in *Coffin v. Steube,* No. 8:04–cv–2669–T–26EAJ, 2006 WL 1169696, at *4–7 (M.D.Fla. May 3, 2006), the "fellow officer rule" is operative in the Eleventh Circuit and the State of Florida and "permits an arresting officer to rely on information supplied by fellow officers to effectuate an arrest." *Id.* at *4. Further, the "collective knowledge" of law enforcement officials should be considered when making a determination of whether arguable probable cause to arrest existed. *See Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997). "Probable cause exists if the facts and the circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed .... However, when considering qualified immunity, the issue is not probable cause in fact, but arguable probable cause. Actual probable cause is not necessary for an arrest to be objectively reasonable. Indeed, it is inevitable that law enforcement officials will in some cases

---

1. Decisions of the Fifth Circuit prior to October 1, 1981, are binding precedent on this Circuit. *Bonner v. City of Pritchard. Ala.,* 661 F.2d 1206 (11th Cir.1981).

reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Id.* (internal citations omitted).

Here, it is not disputed that Officer Riley was performing a discretionary function, so Plaintiff must be able to prove that Officer Riley's actions "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727 (1982). The facts as alleged by Plaintiff, and assumed as true for the purposes of deciding the motion to dismiss, do not sustain a claim that Officer Riley's actions violated a clearly established statutory or constitutional right. Plaintiff admits to being in an area where protesters of the FTAA summit had gathered (indeed, it was her purpose for being there), understood that it was an area of heightened police activity, and admits to meeting and traveling with a group of protesters in the midst of this heightened activity. She admits that she encountered different groups of police officers seeking to disperse the protesters, and was with a group of protesters (the subjects of her interview) when she was initially detained. Plaintiff also does not know what the subjects of her interview were doing immediately before she joined the group.

The arrest affidavit, signed by Officer Riley, states that she was "with a group of individuals which matched description of people who were throwing rocks." Pl. Reply to Mot. to Dismiss, Ex. 1. Officer Riley, relying on this information, signed the arrest affidavit. In light of the circumstances during which the arrest took place, arguable probable cause existed. *Savaiko*, 117 F.3d at 1324. Officer Riley, performing a discretionary function as a police officer, reasonably relied on the information as presented to him by fellow officers. The collective knowledge of the officers gave rise to arguable probable cause to arrest Plaintiff considering the time and circumstances. The fact that the charges were later "nolle pro" or dropped is irrelevant to the Court's inquiry regarding Officer Riley's actions at the time of Plaintiff's arrest.

Finally, the facts in this case are distinguishable from the recent Eleventh Circuit Court of Appeals' unpublished decision [2] in *Killmon v. City of Miami*, No. 06–11208, 2006 WL 2769526 (11th Cir. Sept. 27, 2006) (unreported). In *Killmon*, the plaintiffs alleged specific, nefarious behavior on the part of the defendant law enforcement officers. *See generally id.* The plaintiffs alleged that the law enforcement officers, in a highly coordinated effort, directed or "herded" plaintiffs and others onto railroad tracks hours after a planned march, indiscriminately arrested some protesters and released others, and then charged plaintiffs with the crime of willfully trespassing on railroad tracks. *See id.* at *3. The *Killmon* court held that the officers were not entitled to qualified immunity as those facts did not support a finding that probable cause existed. *Id.* at *4. Further, the court there held that the fellow-officer rule did not apply because the defendant officers were all present at the same time; the court viewed their argument as a thinly-veiled attempt to cloak a "just following orders" defense as a "fellow officer" defense. *Id.* at *3. Here, as discussed above, Officer Riley reasonably relied on the contemporaneous observations and descriptions by fellow officers of Plaintiff's actions, delivered to him after the fact. Thus, for the reasons stated above and

---

**2.** "Unpublished opinions are not considered binding precedent." 11th Cir. Fed. R.App.

P.R. 36–2.

unlike the defendant law enforcement officers in *Killmon,* he is entitled to qualified immunity.

### III. CONCLUSION

For the reasons stated above, it is hereby

ORDERED AND ADJUDGED that Defendant Officer David Riley's Motion to Dismiss the Second Amended Complaint (DE # 35) is GRANTED. The Court finds that Officer David Riley is entitled to qualified immunity. It is therefore

ORDERED AND ADJUDGED that Plaintiff's claim against Officer Riley, Count III of the Second Amended Complaint, is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that the stay imposed by the Court in its Order of August 22, 2006 (DE # 44) is hereby LIFTED. The parties are directed to file a new proposed Joint Scheduling Report within **eleven (11)** days of this Order.