[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 11, 2008
THOMAS K. KAHN
CLERK

No. 07-14795
Non-Argument Calendar
_____

D. C. Docket No. 06-00051-CV-WLS-1

DAVID J. PETERSON, JR.,

Plaintiff-Appellee,

versus

KELLY CRAWFORD, individually and in Their
Official Capacity as Campus Police Patrolman,
Supervisor of Campus Police, and Director of
Security of Dougherty County School District
Campus Police Department,
SAM OLIVER, individually and in Their
Official Capacity as Campus Police Patrolman,
Supervisor of Campus Police, and Director of
Security of Dougherty County School District
Campus Police Department,
WILLIE GRIFFIN, individually and in Their
Official Capacity as Campus Police Patrolman,
Supervisor of Campus Police, and Director of
Security of Dougherty County School District
Campus Police Department,
SALLY WHATLEY, as Superintendent of
Dougherty County School District,

Defendants,

TYWON HEATH, individually and in his
Official Capacity as a Member of the City of
Albany, Georgia Police Department, respectively,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

**(March 11, 2008)**

Before MARCUS, WILSON and HILL, Circuit Judges.

PER CURIAM:

In November of 2003, a female high school student reported to Officer Tywon Heath, a police officer for the City of Albany, Georgia, assigned as a school resource officer, that a black male in a maroon or red car tried to kidnap her. The student described her assailant as being in his thirties, six feet tall, heavily built, with short hair and a mustache. Kelly Crawford, a Dougherty County School System Police Officer, learned about the incident and offered to drive the student to school for a period of time. In December of 2003, Crawford and the student were driving to the school when a small red car passed by. The student told Crawford that she believed the driver might be her assailant. Crawford stopped the vehicle, driven by David J. Peterson, Jr. When Peterson exited the vehicle, the student identified him as her attacker. Crawford called Heath to the scene, who

arrived, arrested Peterson, handcuffed him and took him to the police station. Subsequently, Peterson was indicted by a grand jury, tried, and acquitted.

Peterson filed this action against Kelly Crawford and Heath alleging violations of his federal constitutional rights as well as the state law claims for false arrest and false imprisonment.[1] Peterson alleged that Crawford illegally stopped and detained him, in violation of his Fourth Amendment rights, because Crawford did not have authority to stop and detain or arrest a private citizen over a mile away from the school campus. Peterson also alleged that Heath assisted in the allegedly illegal detention and arrest. The defendants moved for summary judgment.

The district court granted in part and denied in part the defendants' motions for summary judgment. The district court denied Crawford's claim of qualified immunity because Crawford failed to make the required showing that he was acting within his discretionary authority when he arrested Peterson. The court also denied Heath's claim for qualified immunity, concluding that because Crawford was not entitled to immunity on the federal claims, neither was Heath.[2] Next, the

---

[1]Others were named in the action as well. All defendants initially appealed but later dismissed their appeals, with the exception of Heath.

[2]The district court granted Heath's motion for summary judgment on the federal claims in his official capacity, holding that Peterson did not show that defendants had promulgated any policies, customs, or procedures that caused a constitutional violation. *See Monnell v. Dept. of Social Services*, 436 U.S. 658 (1978). Plaintiff does not appeal this judgment.

3

district court denied Heath's motion for summary judgment on the state law claims of false arrest and false imprisonment on the grounds of official immunity, holding that because Crawford had no authority to arrest Peterson (and, therefore, neither did Heath), there was no probable cause for the arrest, thereby permitting a jury to infer the malice required in Georgia to negate official immunity. Heath raises both of these issues on appeal. The district court did not rule on Heath's alternative argument that he is protected by sovereign immunity against any state law claim in his official capacity, but Heath raises this issue, too, on appeal. We review the grant of summary judgment *de novo. Mitchell v. Forsyth*, 472 U.S. 511 (1985).

1.    Qualified Immunity from the Federal Claims

The district court held that Heath was not entitled to qualified immunity because Crawford was not.[3] This was error. First, the district court incorrectly stated that Heath "did not address or make any other arguments for summary judgment on the qualified immunity defense issue other than to argue that Crawford's stop and detention and all subsequent acts are shielded by Crawford's entitlement to qualified immunity." This is inaccurate.

A review of Heath's Memorandum of Law in support of his summary judgment motion plainly shows that Heath argued that he was entitled to summary

_____

[3]The question of Crawford's immunity was not appealed and is not before us. We express no opinion on his entitlement to it.

4

judgment *independently* of whether Crawford was entitled to such immunity. Heath's memorandum states that he is protected by qualified immunity "because his arrest of Plaintiff was constitutionally valid." [R.20, p. 4]. His memorandum further outlines the three requisite prongs of qualified immunity: actions pursuant to the public official's discretionary authority; resulting in either no constitutional violation; or a violation that was either not clearly established or not reasonably known to the actor at the time of his actions, citing *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006).

With respect to these prongs, Heath pointed out in his memorandum of law that Peterson conceded in his pleadings that Heath was acting pursuant to his discretionary authority when he arrested Peterson, citing Plaintiff's Response to Heath's Motion for Summary Judgment [R. 25, at 6]. Furthermore, Heath argued he committed no constitutional violation because he did, in fact, have probable cause to arrest Peterson based upon the victim's identification of Peterson as her assailant. Finally, he points out that a Dougherty County grand jury subsequently indicted Peterson on the same charge for which Heath arrested him – criminal attempt to commit kidnaping, and that over 100 years ago the Supreme Court held that such indictment, found by a proper grand jury, should be accepted everywhere through the United States as at least prima facie evidence of the existence of

probable cause, citing *Beavers v. Henkel*, 194 U.S. 73, 85 (1904).

These arguments are sufficient to raise the issue of Heath's entitlement to qualified immunity irrespective of any entitlement Crawford may have had to the same defense. Heath's entitlement to qualified immunity is an independent question from that of Crawford's, and it is to this issue we turn now.

The district court held that because "the initial stop and detention [by Crawford] was without any official authority . . . the arrest was without probable cause." We disagree. First of all, we do not agree that the existence of probable cause is negated by a lack of authority to arrest. These are separate and unrelated questions. Probable cause to believe a crime has been committed may exist even if the authority to arrest the perpetrator does not. Therefore, the existence of probable cause must be addressed separately from the issue of anyone's authority to arrest Peterson.

Furthermore, even if Crawford did not have the authority to arrest Peterson, it is conceded that Heath did. Once he arrived upon the scene, the question of whether there was probable cause to arrest Peterson arose anew.[4]

---

[4]Peterson argues that Heath is not entitled to immunity because he lost his ability to arrest Peterson as the result of Crawford's allegedly illegal stop. The district court appears to have concurred. We disagree. This appears to be a misapplication of the "fruits of the poisonous tree" doctrine. First, the doctrine applies only to bar the use in a criminal proceeding of evidence illegally seized. We can find no case, and none is cited to us, for the proposition that this doctrine of criminal law bars Heath from exercising his undisputed authority to arrest Peterson if he had probable cause because Crawford misunderstood his authority. Furthermore, even if such

6

Probable cause "to arrest exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997) (internal quotation omitted). We conclude that Heath had such probable cause to arrest Peterson. On the day of the attempted kidnaping, the victim described the perpetrator to Heath. On the day of the arrest, Heath received information from Crawford and the victim that she had identified Peterson and his car. Heath testified that the previous identification "pretty much fit" the subsequent identification of Peterson. After the stop, the victim positively identified Peterson as her assailant. We conclude that Heath certainly had probable cause to arrest Peterson.[5]

In the presence of probable cause, there is no constitutional violation in the arrest of Peterson. Accordingly, the district court's conclusion that Heath was not

_____

a case existed, it would have no application in the context of Heath's claim to qualified immunity from civil suit. In this context, we are concerned only with whether Heath reasonably believed that he had authority to arrest Peterson. Heath was not required to correctly resolve the issue of Crawford's authority – substantially disputed in the record – in order to reasonably conclude that he had such authority, independent of Crawford's.

[5]Even if we were to assume that actual probable cause did not exist to arrest Peterson, it is undeniable that Heath had arguable suspicion to arrest Peterson. *See Moore v. Gwinnett Co.*, 967 F.2d 1495, 1497-98 (11th Cir. 1992) ("This is equivalent to asking whether a "reasonable officer[] in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed . . . .").

entitled to qualified immunity was error and must be reversed.

2. The State Law Claims: Official Immunity and Sovereign Immunity

Heath is entitled to official immunity for performance of his official functions – such as arrest– unless he acted with actual malice or intent to cause injury. *Gilbert v. Richardson*, 264 Ga. 744, 452 S.E.2d 476, 483 (1994). The district court concluded that no official immunity could attach to Heath's actions because Peterson's arrest was without probable cause, thereby permitting a jury to infer malice. Because we conclude that there was probable cause to arrest Peterson, we also conclude that he is entitled to official immunity with respect to the state law claims. Therefore, the denial of summary judgment as to official immunity is due to be reversed.

Finally, the district court did not discuss whether the suit against Heath in his official capacity is barred by sovereign immunity. Because we hold that Heath is entitled to official immunity on the state law claims, we need not discuss this issue either.

Accordingly, the judgments of the district court as to Heath's entitlement to qualified immunity on the federal claims and official immunity on the state claims against him are hereby

**REVERSED.**