[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10478

_____

D.C. Docket No. 3:10-cv-00578-TJC-MCR

KIRHY SMITH,

Plaintiff - Appellee,

versus

SHERIFF,
Clay County, Florida,

Defendant,

DANILO MATOS, in his individual capacity,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 5, 2013)

Before WILSON and COX, Circuit Judges, and VINSON,* District Judge.

_____

* Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

PER CURIAM:

Detective Danilo Matos appeals the district court's denial of his motion for summary judgment on qualified immunity grounds in a suit for false arrest brought by Plaintiff Kirhy Smith pursuant to 42 U.S.C. § 1983. The district court held that there was a genuine factual issue as to whether Detective Matos recklessly omitted material facts from the affidavit supporting Smith's arrest. On appeal, Matos contends that even including the facts he allegedly omitted from the arrest affidavit, there was sufficient probable cause to support the arrest and, therefore, no constitutional violation.[1] We agree and reverse.

## I.  Background

At approximately 4 a.m. on August 7, 2008, Ryan Maynard was approached by two men on Sigsbee Road in Orange Park, Florida. The men struck him in the head, stole his bicycle and iPod, and destroyed his cellular phone. Following the attack, Deputy D.W. Llewellyn of the Clay County Sheriff's Office (CCSO) responded to the scene and took Maynard's victim statement. According to the statement: "The victim described the suspects to be white males, approximately 5-10, 165lbs, both wearing black pants[] & black hooded shirts. The victim said that

---

[1] Detective Matos also argues that *arguable* probable cause, rather than actual probable cause, is the proper legal standard to be applied when ascertaining whether an officer is entitled to qualified immunity in false arrest cases, even when the arrest is made pursuant to a warrant. Because we dispose of this case using the more exacting actual probable cause standard, we need not—and do not—pass upon that question.

one suspect was wearing a blue bandana on his face and the other was wearing a red bandana on his face."

Defendant Detective Matos was subsequently assigned to investigate the robbery. Matos interviewed Maynard on August 8, 2008, the day following the incident. Maynard repeated most of the details he had earlier recounted to Llewellyn, except he stated that while one of his assailants was white, he could not recall the second assailant's race. Matos did not ask Maynard about his previous statement to Llewellyn that both his attackers were white.

About two weeks later, Matos learned that Christopher Palmer, an individual in CCSO custody for an unrelated automobile burglary, might have information regarding the Maynard robbery. Palmer wished to cooperate with authorities on the Maynard robbery while in custody for the unrelated auto burglary. Palmer relayed that on the night of the incident, between 3 and 4 a.m., he was on Sigsbee Road walking home from a friend's house when he encountered Kirhy Smith and a white male whom he knew only as "Shocker." Palmer recognized Smith because Palmer and Smith had previously attended Orange Park High School together and because Palmer had previously attended social gatherings, drank alcohol, and smoked marijuana with Smith.

Palmer relayed that he spoke with Smith and Shocker for a short while and smoked marijuana with them, but then he "started getting a sketchy vibe" and

3

began to walk away.  As he was walking away, he heard Shocker tell Smith, "Look!"  When Palmer turned around he saw a white male (Maynard) riding a bike.  Palmer then saw Smith and Shocker chasing after Maynard, and though Palmer "kept walking" away from Smith and Shocker, he next heard people yelling, the bike crashing to the ground, and someone screaming "Ouch!" Approximately three minutes later, Palmer saw Smith riding the "shiny blue beach cruiser" that Maynard had previously been riding.  Smith apparently told Palmer, "We got him for his shit."

Upon hearing the consistency between Palmer's story and the victim's account of the robbery, Matos believed that Palmer either witnessed or participated in the attack.  Matos questioned Palmer about his possible involvement in the crime, and Palmer vehemently denied any involvement.  Finally, Matos retrieved Smith's driver's license photograph and asked Palmer whether the individual in the photograph was the individual whom he saw accost and rob Maynard.  Palmer positively identified Smith's photograph.  Neither Matos nor anyone else at CCSO ever promised Palmer anything in return for his cooperation.  Matos could think of no reason why Palmer would wrongfully accuse Smith of the crime.

Matos subsequently briefed his CCSO supervisor regarding his interview with Palmer and conducted a background check on Smith, which revealed that Smith had previously pleaded guilty to the offense of accessory to armed robbery.

4

Approximately one month after meeting with Palmer, Detective Matos met with an Assistant State Attorney to obtain an arrest warrant for Smith. Matos and the Assistant State Attorney then presented a pre-filled "Juvenile Pick-Up Order" to a judge, who reviewed and signed it.[2] Matos swore out a warrant affidavit, and in it relayed the account of the offense provided by Palmer, whom he described as a voluntary witness. He added: "It should be noted the witness [Palmer] has personally known the defendant for one year and identified the defendant by name and photograph. It should further be noted the witness provided virtually the identical details of the offense as the victim did. The witness also provided detailed descriptions of the victim and victim's bicycle." The affidavit did not include the fact that Maynard had originally told the responding officer that both his assailants were white, nor did it mention anything about Palmer smoking marijuana with Smith and Shocker. The affidavit also failed to include other discrepancies between Palmer's and Maynard's statements, such as the color of the assailants' pants and bandanas.

School resource officers subsequently picked up Smith and arrested him for the robbery. Smith denied any involvement in the crime. Smith was detained for

---

[2] A juvenile pick-up order is the functional equivalent of an arrest warrant for an adult. For clarity and ease of analysis, we refer to the juvenile pick-up order as an arrest warrant throughout this opinion.

five days and then released.  The State of Florida ultimately declined to prosecute him for the offense.

Smith then sued both Matos and the Sheriff of Clay County pursuant to 42 U.S.C. § 1983 for false arrest and related claims, alleging that Matos deliberately or recklessly made false statements or omissions in the arrest affidavit used to secure a warrant for Smith's arrest.  The defendants moved for summary judgment, and after supplemental briefing and a hearing on the issue of qualified immunity, the district court denied Detective Matos's claim of qualified immunity, finding that in light of Palmer's credibility issues and other inconsistencies between the account given by Palmer and that given by Maynard, "a jury could find that Matos violated Smith's Fourth Amendment rights under *Franks* [*v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978),] by omitting clearly material facts from the arrest affidavit with a reckless disregard for the truth."[3]  This interlocutory appeal followed.

---

[3] We have held that under *Franks*, "a police officer violates the Constitution by obtaining a warrant based on perjurious or recklessly false testimony." *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994).  Where, as here, the plaintiff's claim involves not the *inclusion* of false or misleading testimony in the arrest affidavit, but the *omission* of information essential to a finding of probable cause, the claim is sometimes referred to as a "reverse-*Franks* claim." *See* Kimberly J. Winbush, Annotation, *Reverse-*Franks *Claims, Where Police Arguably Omit Facts from Search or Arrest Warrant Affidavit Material to Finding of Probable Cause with Reckless Disregard for the Truth—Underlying Homicide and Assault Offenses*, 72 A.L.R.6th 437 (2012).

## II. Discussion

### A. *Standard of Review*

"We review de novo the district court's disposition of a summary judgment motion based on qualified immunity, resolving all issues of material fact in favor of [the plaintiff] and then answering the legal question of whether [the defendant is] entitled to qualified immunity under that version of the facts." *Case v. Eslinger*, 555 F.3d 1317, 1324–25 (11th Cir. 2009) (internal quotation marks and italics omitted).

### B. *Qualified Immunity*

"Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities." *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003). It offers complete protection for government officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009). We have often said that qualified immunity "protect[s] from suit all but the plainly

7

incompetent or one who is knowingly violating the federal law." *E.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Once an official demonstrates that he was performing a discretionary function, the burden is on the plaintiff to prove that qualified immunity does not insulate the official from liability. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). The parties do not dispute that Detective Matos was engaged in a discretionary function when he made the arrest in this case; Smith therefore shoulders the burden of proving that Matos does not enjoy qualified immunity protection.

In determining whether an officer is qualifiedly immune, we undertake a two-part inquiry, asking: (1) whether the facts, taken in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a constitutional right of the plaintiff; and (2) whether the right allegedly violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). Finally, we are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818.

C. *Smith's Claim*

Smith complains that he suffered a false arrest in violation of the Fourth and Fourteenth Amendments when Detective Matos submitted a misleading warrant affidavit to the judge to secure the warrant authorizing Smith's arrest. Ordinarily, "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a [§] 1983 claim, but the existence of probable cause at the time of arrest constitutes an absolute bar to a [§] 1983 action for false arrest." *Case*, 555 F.3d at 1326–27 (internal quotation marks and alterations omitted). Further, where, as here, a judge or grand jury issues a warrant or indictment prior to an arrest, such intervening acts "br[eak] the chain of causation for the detention from the alleged false arrest." *Jones v. Cannon*, 174 F.3d 1271, 1287 (11th Cir. 1999); *see Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (per curiam) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."); *see also Barts v. Joyner*, 865 F.2d 1187, 1195–96 (11th Cir. 1989). Pursuant to *Franks*, however, the existence of a warrant will not shield an officer from liability where the warrant was secured based upon an affidavit that contained

9

misstatements made either intentionally or with reckless disregard for the truth. *W. Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 959 (11th Cir. 1982).

A corollary of the above-stated rule is that "a warrant affidavit violates the Fourth Amendment when it contains *omissions* made intentionally or with a reckless disregard for the accuracy of the affidavit." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997) (emphasis supplied) (internal quotation marks omitted). Omissions that are negligent rather than reckless are of no constitutional magnitude and will not invalidate a warrant. *Id.* at 1327. Further, "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.*

"Doubtless it will often be difficult for an accused to prove that an omission was made intentionally or with reckless disregard rather than negligently unless he has somehow gained independent evidence that the affiant had acted from bad motive or recklessly in conducting his investigation and making the affidavit." *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).[4] Where a plaintiff lacks direct evidence that the affiant has intentionally or recklessly omitted information from an affidavit, however, he can raise an inference of recklessness by pointing to "facts omitted from the affidavit [that] are clearly critical to a

---

[4] Pursuant to *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), all decisions of the former Fifth Circuit announced prior to October 1, 1981, are binding precedent in this circuit.

10

finding of probable cause." *Madiwale*, 117 F.3d at 1327; *see also Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002) ("[T]he warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause.").

Here, it is plain that Smith has adduced no direct evidence that Detective Matos omitted material information from the arrest affidavit either intentionally or with reckless disregard for the truth. Thus, to overcome summary judgment on qualified immunity grounds, Smith must identify certain facts omitted from the affidavit that "were so clearly material that every reasonable law officer would have known that their omission would lead to a search [or seizure] in violation of federal law." *Madiwale*, 117 F.3d at 1327 (internal quotation marks and alteration omitted). That he cannot do.

Probable cause is "a standard well short of absolute certainty." *L.A. County v. Rettele*, 550 U.S. 609, 615, 127 S. Ct. 1989, 1993 (2007). "Th[e] standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee*, 284 F.3d at 1195 (internal quotation marks omitted). "Probable cause requires more than mere suspicion, but does not require convincing proof." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th

11

Cir. 1998). The probable cause analysis is undertaken in light of the totality of the circumstances, and the standard "must be judged not with clinical detachment, but with a common sense view to the realities of normal life." *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (quoting *Wilson v. Attaway,* 757 F.2d 1227, 1236 (11th Cir. 1985)).

Smith argues that the following factual inconsistencies, in addition to other minor details Detective Matos omitted from the warrant affidavit, would have defeated probable cause had they been disclosed to the judge who signed the warrant for Smith's arrest: (1) Maynard's initial description of both of his attackers as white males; (2) the color of the assailants' pants, bandanas, and shirts; and (3) the fact that Palmer had smoked marijuana prior to the incident, which could have impaired his recollection. The district court thought these inconsistencies, in addition to certain credibility issues relating to Palmer, were clearly critical to a finding of probable cause. We cannot agree.

We have previously stated that an informant's tip is entitled to substantial weight in the probable cause calculus if it contains "an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand." *United States v. Martin*, 297 F.3d 1308, 1315 (11th Cir. 2002) (internal quotation marks omitted). Here, Detective Matos acted upon a voluntary statement made by Palmer, a witness who, though in custody, was

12

promised nothing in return for his testimony.  Palmer accurately described the exact time and location of the robbery (around 4 a.m. on Sigsbee Road in Orange Park, Florida), the number of suspects involved in the robbery (two), that both attackers were wearing bandanas to cover their faces, that a bicycle was stolen during the robbery, and that the bicycle was a shiny blue beach cruiser.  Palmer also indicated that he had known Smith for over a year and confirmed Smith's identity via his driver's license photograph.  Detective Matos had no reason to question Palmer's veracity.

In our view, the exhaustive detail of Palmer's vivid—and largely accurate—description of the offense augurs strongly in favor of a finding of probable cause. *See id.*  That is especially so given that Detective Matos corroborated Palmer's statement by running a background check on Smith, which revealed that Smith had previously been arrested for accessory to armed robbery—an offense strikingly similar to the charged offense in the case at bar. *See Case*, 555 F.3d at 1327 (explaining that corroboration of an informant's statement adds significantly to a finding of probable cause).  In sum, armed with all of the facts at our command, we simply cannot say that Detective Matos omitted facts that "were so clearly material that every reasonable law officer would have known that their omission would lead to a search [or seizure] in violation of federal law." *Madiwale*, 117 F.3d at 1327

13

(internal quotation marks and alteration omitted).  Accordingly, the shroud of qualified immunity protects him.

Further, and with regard to Palmer's credibility, we note that courts around the country regularly sustain *convictions* based upon the testimony of witnesses with far less credibility than Palmer, so it would be passing strange to now declare that the credibility issues presented here, in light of the totality of the circumstances in this case and the detailed nature of Palmer's statement, necessarily defeat probable cause such that no reasonable officer could have thought probable cause existed for Smith's arrest.  *See, e.g.*, *United States v. Flores*, 572 F.3d 1254, 1262–63 (11th Cir. 2009) (per curiam) (explaining the standard required to overturn a conviction for lack of witness credibility); *see also United States v. Hoskins*, 628 F.2d 295, 296 (5th Cir. 1980) ("A federal conviction . . . can be based on the uncorroborated testimony of a single witness.").

To be sure, we do not condone Detective Matos's failure to engage in further police work before pursuing a warrant for Smith's arrest, and we are troubled by the omissions of certain facts from the affidavit eventually used to secure a warrant for Smith's arrest.  At the same time, however, we are reticent to judge the acts of police officers, undertaken in real time and on the front lines, through the finely wrought lens of 20/20 hindsight.  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).  In a perfect world, Detective Matos would have included the

14

alleged inconsistencies in the warrant affidavit.  But perfection is not the standard by which his conduct is judged.  Nor is negligence, for that matter.  *See Madiwale*, 117 F.3d at 1327 (noting that the negligent omission of facts from an affidavit will not invalidate a warrant).  Rather, qualified immunity protects officers in all cases except those in which the conduct at issue was "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1318 (11th Cir. 2003) (internal quotation marks omitted).  Detective Matos's conduct was neither plainly incompetent nor a knowing violation of the law, and he is therefore shielded by the aegis of qualified immunity.  The judgment of the district court is reversed, and the case is remanded with instructions to enter summary judgment in favor of Detective Matos.

**REVERSED AND REMANDED.**