[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12238
_____

D.C. Docket No. 6:15-cv-00469-GKS-DCI


SEANA BARNETT,

                                        Plaintiff-Appellant,

versus

SARA MACARTHUR, et al.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 15, 2020)

Before JORDAN, GRANT, and DUBINA, Circuit Judges.

JORDAN, Circuit Judge:

In the early morning hours of March 15, 2014, Seminole County Deputy Sara MacArthur arrested Seana Barnett on suspicion of driving under the influence of alcohol and transported her to the Seminole County Jail.  At the Jail, Ms. Barnett twice took a breathalyzer test, and both times the results were a blood alcohol level of 0.000.  Though the tests established that Ms. Barnett was not intoxicated by alcohol and there was no evidence that she was impaired by any other drug or substance, she was detained for eight hours—even after she posted bond—pursuant to the DUI eight-hour "hold policy" of the Seminole County Sheriff's Office.  Two months later, the state entered a *nolle prosequi* on the DUI charge against Ms. Barnett.

Ms. Barnett sued Deputy MacArthur and the Sheriff of Seminole County under 42 U.S.C. § 1983, alleging that they violated her Fourth Amendment rights by falsely arresting her and by unlawfully detaining her.  She also asserted state-law claims for false imprisonment and malicious prosecution.  Deputy MacArthur and the Sheriff moved for summary judgment on all claims.  The district court denied qualified immunity to Deputy MacArthur, and we affirmed that ruling on interlocutory appeal.  *See Barnett v. MacArthur*, 715 F. App'x 894 (11th Cir. 2017).

The district court ultimately granted summary judgment in part against Ms. Barnett but allowed the § 1983 unlawful arrest and detention claim against Deputy MacArthur and the state-law false imprisonment claim against the Sheriff to proceed

to trial. As relevant here, the district court ruled that the Sheriff—as a representative of the County—could not be liable under § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because his "hold policy" was permitted by Florida law. The jury ultimately returned a verdict in favor of the defendants on the two claims that survived summary judgment.

Ms. Barnett appeals the district court's grant of summary judgment on some of her claims and the denial of her motion for a new trial following the jury's verdict on the remaining two claims. We reverse the entry of summary judgment in favor of the Sheriff on the *Monell* claim related to Ms. Barnett's detention, but summarily affirm in all other respects.[1]

## I

We begin by setting out the evidence presented at summary judgment on the detention claim against the Sheriff under *Monell*.

## A

On March 15, 2014, at around 6:00 p.m., Ms. Barnett went out to dinner with her friend Alicia Norwood in downtown Orlando. After dinner, they walked around

---

[1] For example, the district court correctly granted summary judgment to the Sheriff on Ms. Barnett's state-law malicious prosecution claim. That claim, which requires a showing of malice, is barred by Fla. Stat. § 768.28(9)(a). *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1330 (11th Cir. 2015).

the area.  At the end of the evening, Ms. Barnett drove Ms. Norwood home, from downtown Orlando back to Seminole County, in Ms. Norwood's car.

On the drive home, at around 3:25 a.m., Ms. Barnett stopped for about 8 to 10 seconds at a green light.  She stopped to assess which way to turn because it was dark, she was unfamiliar with the area, and Ms. Norwood was providing confusing directions, initially telling her to make a left and then changing her mind about which way to go to take a shortcut home.  There were no other cars nearby.

After seeing the vehicle stop at a green light, Deputy MacArthur activated her in-car video and followed Ms. Barnett for a short distance before initiating a traffic stop.  According to Deputy MacArthur, she observed Ms. Barnett driving about 10 miles under the speed limit (35 miles per hour in a 45-miles-per-hour zone), drifting from left to right within her lane, and varying her speed between 35 and 40 miles per hour.  Ms. Barnett disputes that she was driving erratically.  She contends that the video shows no perceptible drifting in her lane and does not show her varying her speed, other than when she slowed down to turn left.  For purposes of our discussion, we accept Ms. Barnett's version of events.

When Deputy MacArthur approached the car and spoke to Ms. Barnett, she asked for her driver's license, registration, and proof of insurance.  Ms. Barnett provided her driver's license, but according to Deputy MacArthur, she needed to be reminded again to provide her registration and proof of insurance.  She attempted to

4

open the glove compartment to retrieve the documents, but "fumbled" with the button and was unable to open it. The parties dispute whether Ms. Barnett's eyes were "glassy" and "bloodshot," so we assume they were not.

Before it became clear to Ms. Barnett that she was being investigated for driving under the influence, Deputy MacArthur asked her if she had any medical issues. She said no, thinking that she was being asked if she had any medical conditions—such as a seizure disorder—that would prevent her from driving safely.

Deputy MacArthur then asked Ms. Barnett if she had been drinking, and she responded that she had a glass of wine with dinner at around 6:00 p.m. that evening. After that, Deputy MacArthur asked if she was willing to participate in field sobriety exercises. Ms. Barnett agreed, but she did not know what the exercises would entail. Deputy MacArthur proceeded to conduct horizontal and vertical gaze nystagmus evaluations, a walk and turn exercise, a one-leg stand, a finger-to-nose test, and a number-counting exercise. Upon realizing what the tests involved, Ms. Barnett repeatedly told Deputy MacArthur that her performance could be affected by injuries she sustained in an automobile accident in October 2013, including muscle tears in her leg for which she was going to physical therapy.[2]

---

[2] Ms. Barnett had also undergone neck surgery just two days earlier. Ms. Barnett asserts in her brief that she told Deputy MacArthur about this surgery after learning what the field sobriety tests entailed, but it is unclear from the record whether Deputy MacArthur was informed about the neck surgery. *See* D.E. 64 at 211.

This was Deputy MacArthur's first or second time making a DUI arrest, and the parties dispute whether she explained, administered, and interpreted the results of the field sobriety tests properly. The parties also dispute how well Ms. Barnett performed on the field sobriety tests, some of which occurred outside the view of Deputy MacArthur's dashboard video camera. Deputy MacArthur claims that she witnessed multiple indicators of impairment, while Ms. Barnett denies there were any such indicators. Again, we accept Ms. Barnett's factual assertions.

Deputy MacArthur arrested Ms. Barnett for driving under the influence. On the way to the Seminole County Jail, Deputy MacArthur told Ms. Barnett that she thought she was impaired because of alcohol.

At her deposition, Deputy MacArthur testified that there was no indication that Ms. Barnett had been using drugs. Specifically, she did not observe any evidence of drugs in Ms. Barnett's vehicle, find any drugs in her purse, or smell marijuana in her car. Ms. Barnett, moreover, did not slur or speak in a manner that suggested she was impaired. Indeed, Deputy MacArthur testified that she did not have probable cause to believe that Ms. Barnett was under the influence of drugs. *See* D.E. 64 at 104 ("Q. Well, you didn't have any probable cause to believe she was under any drugs or any kind of prescription medicine or anything when you arrested her, correct? . . . A. Correct."). In the arrest and offense reports, Deputy MacArthur

indicated that the arrest was alcohol-related and that any drug use was unknown: "Alcohol Related: Y"; "Drug Related: U." *See* D.E. 35-4 at 2; D.E. 64-14 at 1.

**B**

When Ms. Barnett arrived at the Jail, Keith Betham, the breath test operator, observed her for 20 minutes and then conducted breathalyzer testing. Ms. Barnett provided two breath samples, both of which registered 0.000 for alcohol. Mr. Betham testified at his deposition that after observing Ms. Barnett, he did not see any signs that she was impaired by drugs. He nevertheless obtained a urine sample from Ms. Barnett at Deputy MacArthur's request. The urine test results, which came back around four weeks later, confirmed that Ms. Barnett did not have any drugs in her system.

Even though the breathalyzer tests established that Ms. Barnett was not intoxicated, she was required to remain at the jail for eight hours from the time of her arrest pursuant to the "hold policy" of the Seminole County Sheriff's Office. Mr. Betham testified that under this policy, even if a DUI arrestee's breathalyzer test results are 0.000, and even if there is no indication that the arrestee is under the influence of drugs, she still must wait eight hours from the time of the arrest to be released—even if she posts bond.

Shane Love, the Captain of Operations at the Jail, confirmed at his deposition that it is the policy of the Seminole County Sheriff's Office to detain DUI arrestees

for at least eight hours, even if their breathalyzer test results are 0.000. Deputy MacArthur similarly testified that once she arrested Ms. Barnett, she was going to have to stay in jail for eight hours pursuant to this policy.

In accordance with the hold policy, Ms. Barnett's jail arrest card stated that she was arrested at 4:10 a.m. and noted that she "can go at 12:10"—eight hours later. D.E. 64-17. Ms. Barnett ultimately was released a little over eight hours from the time of her arrest, at 1:13 p.m., despite having posted bond at 10:58 a.m.

## II

Ms. Barnett challenges the district court's grant of summary judgment in favor of the Sheriff on her § 1983 detention claim under *Monell*. She argues that she was unlawfully detained pursuant to the Sheriff's hold policy, which violates the Fourth Amendment because it requires continued detention even where, as here, there is no probable cause for such detention. Exercising plenary review, *see, e.g., Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018), and viewing the evidence in the light most favorable to Ms. Barnett, *see, e.g., Scott v. Harris*, 550 U.S. 372, 378 (2007), we agree with her that the district court should not have entered summary judgment in favor of the Sheriff on her detention claim.[3]

---

[3] Ms. Barnett does not (and cannot) argue that she was arrested as a result of the Sheriff's hold policy. She asserts only that she was unlawfully detained based on the policy. So, for purposes of

8

**A**

The detention claim against the Sheriff in his official capacity is in effect a claim against Seminole County. *See Monell*, 436 U.S. at 690 n.55 (explaining that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). A municipality can be sued directly under § 1983 when one of its customs, practices, or policies causes a constitutional injury. *See id*. at 690. The plaintiff must demonstrate, however, that the municipality was the "moving force" behind the injury. *See Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). As we explain, Ms. Barnett presented sufficient evidence that she was unconstitutionally detained as a result of the Sheriff's hold policy to survive summary judgment.

The Fourth Amendment, in relevant part, protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. One of the Amendment's protections is the right to be free from arrest without probable cause. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) ("Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment.") (citation and internal quotation marks omitted).

---

our discussion on the *Monell* claim, we assume without deciding at the summary judgment stage that Deputy MacArthur had probable cause to arrest Ms. Barnett.

9

Probable cause exists when "an arrest is objectively reasonable based on the totality of the circumstances." *Id.* "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (citation and internal quotation marks omitted). Stated differently, probable cause to arrest "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation and internal quotation marks omitted). An officer's "on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975). As we have noted, we assume for summary judgment purposes that Deputy MacArthur had probable cause to arrest Ms. Barnett.

But probable cause to make a warrantless arrest is not the end of the matter, for "[d]etention [in jail] . . . is a type of seizure of the person to which Fourth Amendment protections attach." *Alcocer v. Mills*, 906 F.3d 944, 953 (11th Cir. 2018). Just as "probable cause may cease to exist after a warrant is issued," *United States v. Grubbs*, 547 U.S. 90, 95 n.2 (2006), it may also dissipate after an officer makes a warrantless arrest. *See, e.g., BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.

1986) ("The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause."); *McConney v. City of Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989) ("[O]nce a responsible officer actually does ascertain beyond a reasonable doubt that one who has been so arrested is not intoxicated, the arrestee should be released."); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) ("It is well-established that a person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.") (citation and internal quotation marks omitted); 3 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 5.3(d) (5th ed. 2012) ("Even if a particular arrest was lawfully made upon probable cause to believe that the person arrested had committed an offense, additional information coming to the attention of the police after the arrest may establish an absence of probable cause, in which case the arrested person is entitled to be released."). *Cf. Thompson v. Olson*, 798 F.2d 552, 556 (1st Cir. 1986) (addressing false imprisonment claim under Maine law: "following a legal warrantless arrest based on probable cause, an affirmative duty to release arises only if the arresting officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded").

11

**B**

It is undisputed that the Sheriff's hold policy mandates an eight-hour detention of a person like Ms. Barnett who is charged with a DUI—even if her breathalyzer test results show that her blood alcohol content is .000 and even if she posts bond. The summary judgment evidence in the district court (including the testimony of Mr. Betham and Captain Love) makes that clear, and the Sheriff concedes the point in his brief. *See* Answer Br. at 20–28.

In granting summary judgment in favor of the Sheriff, the district court reasoned that the hold policy is consistent with Florida Statute § 316.193(9), which allows the option of holding a person for eight hours after a DUI arrest. *See* D.E. 111 at 18. This constituted error for two independent reasons. First, unlike the hold policy, § 316.193(9) does not mandate the blanket eight-hour detention of all DUI arrestees. Second, even if it did, the statute could be unconstitutional as applied to Ms. Barnett through the Sheriff's hold policy.

The language of § 316.193(9) is as follows:

A person who is arrested for a violation of this section may not be released from custody:

(a) Until the person is no longer under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893 and affected to the extent that his or her normal faculties are impaired;

(b) Until the person's blood-alcohol level or breath-alcohol level is less than 0.05; *or*

12

(c) Until 8 hours have elapsed from the time the person was arrested.

(emphasis added). Subsections (a), (b), and (c) are separated by an "or," and that word is "almost always disjunctive[.]" *United States v. Woods*, 571 U.S. 31, 45 (2019). So, as we explained in Deputy MacArthur's interlocutory appeal, "[§] 316.193 simply requires one of three conditions to be met to ensure sobriety prior to releasing a DUI arrestee, one of which is an eight hours lapse from the time of arrest and one of which is a blood-alcohol level below 0.05." *Barnett*, 715 F. App'x at 908. Unlike the Sheriff's hold policy, pursuant to which officers are *required* to detain DUI arrestees for eight hours, § 316.193 gives officers discretion in determining when to release a DUI arrestee and allows for three release options (only one of which is an eight-hour hold). *See id*. "When an officer exercises this discretion under Florida law, the *Constitution* requires her to exercise her discretion in a way that does not violate a person's Fourth Amendment rights." *Id*.

But even if the Sheriff's hold policy were consistent with (or mandated by) § 316.193, the existence of a state statute does not answer the federal constitutional question. It has long been understood that a state law must conform to the Constitution, and if it does not do so it must yield. *See, e.g., M'Culloch v. Maryland*, 17 U.S. 316, 361 (1819) (explaining that, due to the Supremacy Clause, "the states are prohibited from passing any acts which shall be repugnant to a law of the United States"). The same goes for a municipal ordinance or policy. *See, e.g., Cty. of*

13

*Riverside v. McLaughlin*, 500 U.S. 44, 58–59 (1991) (holding that a county policy which provided for probable cause determinations within two days of a warrantless arrest, exclusive of weekends and holidays, was inconsistent with the Fourth Amendment).  So, the fact that § 316.193 permits holding a DUI arrestee for up to eight hours does not immunize the Sheriff's hold policy, as applied to Ms. Barnett, from constitutional scrutiny.  *See Cooper v. Dillon*, 403 F.3d 1208, 1222–23 (11th Cir. 2005) (holding that a city could be liable for enforcing an unconstitutional policy, even though the policy was consistent with a Florida statute, because the statute itself was unconstitutional).  *See also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278–80 (10th Cir. 2009) (holding that a municipality can be held liable under *Monell* if its ordinance is applied unconstitutionally); *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 125–26 (2d Cir. 2004) (same).[4]

On this record, Ms. Barnett's detention claim against the Sheriff must be decided by a jury.  Viewing the evidence in the light most favorable to her, Ms. Barnett was kept in custody pursuant to (and because of) the Sheriff's mandatory eight-hour hold policy after her two breathalyzer test results registered blood-alcohol readings of 0.000 and after she posted bond.  The only remaining question then, is

---

[4] The Sheriff cannot assert qualified immunity because he is being sued in his official capacity under a municipal liability theory.  *See Owen v. City of Indep.*, 445 U.S. 622, 638 (1980) (holding that a "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983").

whether a reasonable jury could find that the hold policy, as applied to Ms. Barnett, violated her Fourth Amendment rights. On this issue, we are persuaded by the Fifth Circuit's opinion in *McConney.*

In *McConney*, the plaintiff claimed that after being arrested for public intoxication, he was unlawfully detained pursuant to a city policy requiring anyone who was arrested on such a charge to be held for four hours, even after the officers learned that he was not intoxicated. *See* 863 F.2d at 1185. The Fifth Circuit affirmed the district court's entry of judgment against the city in accordance with the jury's verdict. *See id.* at 1188. It explained that "a person may constitutionally be detained for at least four or five hours following a lawful warrantless arrest for public intoxication without the responsible officers having any affirmative duty during that time to inquire as to whether the person is intoxicated, even if requested to do so." *Id.* at 1185. But, the Fifth Circuit cautioned, "once a responsible officer actually does ascertain beyond a reasonable doubt that one who has been so arrested is in fact not intoxicated, the arrestee should be released." *Id.* The Fifth Circuit based its decision in part on a First Circuit state-law false imprisonment case involving suspected intoxication, which had adopted this same standard from the Restatement (Second) of Torts § 134, comment f. *See id.* (citing *Thompson*, 798 F.2d at 556).

We agree with the Fifth Circuit. Following a warrantless DUI arrest based on probable cause, officers do not have an affirmative Fourth Amendment duty to

15

investigate or continually reassess whether the arrestee is or remains intoxicated while in custody.  But where, as here, the officers seek and obtain information which shows beyond a reasonable doubt that the arrestee is not intoxicated—in other words, that probable cause to detain no longer exists—the Fourth Amendment requires that the arrestee be released.  Here, as in *McConney*, a reasonable jury viewing the evidence in the light most favorable to Ms. Barnett could find that her continued detention pursuant to the Sheriff's eight-hour hold policy violated the Fourth Amendment. [5]

First, a jury could find that the officers at the Seminole County Jail obtained information showing beyond a reasonable doubt that there was no longer probable cause to continue holding Ms. Barnett.  Her two breathalyzer test results resulted in blood-alcohol readings of 0.000, which indicated that she had no alcohol whatsoever in her system.  And Deputy MacArthur and Mr. Betham admitted there was no evidence that Ms. Barnett—who did not smell of marijuana or slur her words—was under the influence of drugs.

Second, a jury could easily find that the Sheriff's hold policy was the "moving force" behind the Fourth Amendment violation (i.e., Ms. Barnett's continued detention).  *See Brown*, 520 U.S. at 404.  Ms. Barnett's jail arrest card stated that she

---

[5] Our holding does not mean that the hold policy is categorically unconstitutional.  That is a question we do not and need not decide.

16

"can go at 12:10," eight hours after her arrest, which is consistent with the mandatory hold policy. Mr. Betham and Captain Love testified that DUI arrestees are detained for eight hours under the hold policy. And, Mr. Betham told Ms. Barnett that although there was nothing in her system, she had to stay in custody for eight hours.

One of our own cases supports the conclusion we reach. In *Alcocer v. Mills*, we held under the Fourth Amendment that officials could not continue to hold a person arrested for driving on a suspended license after she posted bond unless they could "show they had probable cause" to believe she had committed another offense. *See Alcocer*, 906 F.3d at 953–54 ("Any facts that might have underpinned the conclusion that [the plaintiff] was in the United States illegally were not a part of the probable cause that supported [her] original detention, which was for the misdemeanor of driving with a suspended license. For this reason, independent probable cause was required to warrant [the plaintiff's] continued detention after she had satisfied all conditions of her bond on her original detention."). *Alcocer* is consistent with our conclusion that where police have no probable cause to detain an arrestee, the arrestee must be released.[6]

---

[6] In *State v. Atkinson*, 755 So. 2d 842, 845 (Fla. 5th DCA 2000), Florida's Fifth District Court of Appeal held that § 316.193(9) "is not unconstitutional in allowing temporary detention of an apparently drunk driver, nor does such detention give rise to any viable claim of double jeopardy by the detainee at any subsequent criminal trial." We have considered *Atkinson*, but conclude that it is distinguishable because in that case the arrestees, unlike Ms. Barnett, had "refused a breath test or were measured as having an unlawful alcohol level." *Id.* at 843. There was, in other words, no evidence in *Atkinson* demonstrating beyond a reasonable doubt that the arrestees were not intoxicated.

## C

The Sixth Circuit has rejected the argument that "[w]hen subsequent developments disprove the correctness of a previous police determination that probable cause exists, . . . the police no longer have justification under the Fourth Amendment to continue the incarceration, and must release the suspect." *Peet v. City of Detroit*, 502 F.3d 557, 565 (6th Cir. 2007). We choose not to follow *Peet* for two reasons.

First, the Sixth Circuit incorrectly suggested that there were no cases or authorities supporting the Fourth Amendment proposition it rejected. *See id.* When *Peet* was decided in 2007, however, the Fifth and Seventh Circuits had already held under the Fourth Amendment that a person must be released from custody if the probable cause that existed for her arrest has dissipated. *See BeVier*, 806 F.2d at 128; *McConney*, 863 F.2d at 1185. For some reason, the Sixth Circuit did not acknowledge, consider, or discuss those decisions.

Second, the Sixth Circuit was concerned that investigators would have an affirmative duty to re-evaluate the matter of probable cause with every new piece of information or evidence they received. *See id.* The Fourth Amendment standard we announce, borrowed from the *McConney* decision of the Fifth Circuit, does not place on police officers an affirmative and independent duty to further investigate in order to continually reassess the matter of probable cause in warrantless arrest cases.

18

It only requires that the officers release an arrestee if evidence they obtain demonstrates beyond a reasonable doubt that there is no longer probable cause for the detention. That standard, we believe, properly balances the competing liberty interests and law enforcement concerns and remains faithful to the Fourth Amendment's textual command that seizures and detentions be reasonable. *See Riley v. California*, 573 U.S. 373, 381 (2014) ("As the text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness.") (citation and internal quotation marks omitted).[7]

## D

One final matter warrants discussion. The Sheriff contends that he cannot be liable under *Monell* because the jury found in favor of Deputy MacArthur on the individual Fourth Amendment detention claim against her. As the Sheriff sees things, the jury verdict means that there was no Fourth Amendment violation, and without a Fourth Amendment violation there cannot be municipal liability under *Monell*. *See* Answer Br. at 17–20.

The syllogism is superficially seductive, but on this record it does not work. It is true, as the Sheriff says, that "an inquiry into a governmental entity's custom or

---

[7] We express no view on what the Fourth Amendment may or may not require when an arrest is made pursuant to a valid warrant and the arrestee claims that new evidence has caused probable cause to dissipate. For one case addressing such a scenario, see *Brady v. Dill*, 187 F.3d 104, 111 (1st Cir. 1999).

19

policy is relevant only when a constitutional deprivation has occurred." *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996). But the problem for the Sheriff is that the jury verdict in favor of Deputy MacArthur does not constitute a finding that Ms. Barnett suffered no Fourth Amendment violation as a result of the detention.

We have held that "*Monell* . . . and its progeny do not require that a jury must first find an individual defendant liable before imposing liability on local government." *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985). For example, municipal liability can exist if a jury finds that a constitutional injury is due to a municipal policy, custom, or practice, but also finds that no officer is individually liable for the violation. *See id.* ("[I]f the jury were to find, as it did, that the deprivation of Mr. Anderson's constitutional rights was a result of understaffing, then it would logically find no fault on the part of the individual arresting officers.").

This is not a controversial concept, as many of our sister circuits have come to the same conclusion. *See Garcia v. Salt Lake Cty.*, 768 F.2d 303, 310 (10th Cir. 1985) ("*Monell* does not require that a jury find an individual defendant liable before it can find a local governmental body liable [under § 1983]. . . . Although the acts and omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights."); *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994) (en banc) ("We hold that in a

20

substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the Constitution. . . . A finding of municipal liability does not depend automatically or necessarily on the liability of any police officer."); *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ("We agree with our sister circuits that under *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants."); *Speer v. City of Wynne*, 276 F.3d 980, 985–86 (8th Cir. 2002) ("Our court has . . . rejected the argument that . . . there must be a finding that a municipal employee is liable in his individual capacity as a predicate to municipal liability. . . .  [S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation."); *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("If a plaintiff establishes that he suffered a constitutional injury *by the City*, the fact that individual officers are exonerated is immaterial to liability under § 1983."); *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) ("[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict.").  So has a leading treatise on § 1983.  *See* Sheldon Nahmod,

21

Civil Rights and Civil Liberties Litigation: The Law of Section 1983 § 6:13 at 6–49 (2019 ed.) ("[A]s a general matter a local government can be independently liable for its own unconstitutional policy or custom which caused harm to a plaintiff, even if its officials or employees did not themselves violate the plaintiff's constitutional rights in the course of implementing that policy or custom.").[8]

Where, as here, a jury has returned a verdict in favor of an individual defendant on a § 1983 claim, the question is whether that verdict "can be harmonized with a concomitant verdict or decision imposing liability on the municipal entity. The outcome of the inquiry depends on the nature of the constitutional violation alleged, the theory of municipal liability asserted by the plaintiff, and the defenses set forth by individual actors." *Speer*, 276 F.3d at 986. *Accord Thomas*, 604 F.3d at 305. We conclude that the jury verdict in favor of Deputy MacArthur does not preclude a finding of municipal liability due to the Sheriff's mandatory eight-hour hold policy.

At trial, there was no evidence that Deputy MacArthur had any discretion or role in keeping Ms. Barnett in custody after arresting her and taking her to the Jail. Indeed, Captain Love testified that Deputy MacArthur turned Ms. Barnett over to

---

[8] The same holds true when an individual defendant is protected from § 1983 liability by qualified immunity. In that situation, the municipality is not necessarily absolved of liability. *See, e.g., Horton v. City of Santa Maria*, 915 F.3d 592, 604 (9th Cir. 2019); *Int'l Ground Transp. v. Mayor & City Council of Ocean City*, 475 F.3d 214, 219–20 (4th Cir. 2007) (plurality opinion); Nahmod, Civil Rights and Civil Liberties Litigation § 6:13 at 6–46.

the staff at the Jail, and he confirmed that deputies had no discretion to release DUI arrestees before eight hours had passed. *See* D.E. 175 at 156–57. Mr. Betham testified that the Jail's booking staff—not Deputy MacArthur—wrote on Ms. Barnett's jail arrest card that she could be released at 12:10 (eight hours after she arrived), consistent with the Jail's policy that when an individual is arrested for impaired driving, she must be held for eight hours. *See* D.E. 179 at 38; D.E. 167-18. Ms. Barnett similarly testified that after her breath test results were negative, Mr. Betham told her that she had to stay at the Jail for eight hours anyway. *See* D.E. 181 at 123. Deputy MacArthur confirmed that even if Ms. Barnett posted bond before the end of the eight-hour period, she would have to stay at the Jail for eight hours. *See* D.E. 179 at 251.

Given this evidence, defense counsel told the jury in closing argument that Deputy MacArthur could not be held liable on the Fourth Amendment detention claim because the undisputed evidence showed that Ms. Barnett was kept in custody pursuant to the Sheriff's mandatory hold policy, a policy that Deputy MacArthur had no discretion to deviate from:

> The other thing . . . as to the stay at the jail, the testimony has been— and I don't recall any conflict on it—that it was the policy of the Sheriff that, if somebody's arrested for DUI, driving under the influence, they're brought to the jail; they're going to be there for eight hours. So that wasn't Deputy MacArthur's decision that Ms. Barnett was continued to be detained at the jail. That was the policy of the Sheriff and . . . she didn't do anything wrong in terms of that.

23

D.E. 181 at 252.

The district court instructed the jury that, on the individual detention claim against Deputy MacArthur, Ms. Barnett had to show that Deputy MacArthur "intentionally committed acts that violated [her] constitutional right not to be arrested or detained without probable cause." D.E. 165 at 30. When the jury asked whether Ms. Barnett could have been released after her 0.000 breathalyzer test results, the district court declined to answer that question. *See* D.E. 183 at 21–23. So the jury was not asked to determine whether, as a general matter, Ms. Barnett suffered a Fourth Amendment violation due to the hold policy.

Because the jury found only that Deputy MacArthur had not "intentionally committed acts that violated [Ms.] Barnett's Fourth Amendment right . . . not to be arrested or detained without probable cause," DE. 169 at 1 (verdict form), its verdict says nothing about whether the continued detention of Ms. Barnett—after her breathalyzer tests and after posting bond—due to the Sheriff's hold policy violated the Fourth Amendment. Stated differently, the jury was asked to decide only whether Deputy MacArthur was personally responsible (due to "intentionally committed acts") for any Fourth Amendment violations, and not whether Ms. Barnett suffered a Fourth Amendment violation due to her continued detention. Under the circumstances—including the evidence presented, the defense theory, the jury instructions, and the verdict form—the jury's verdict in favor of Deputy

24

MacArthur does not insulate the Sheriff from a § 1983 claim under *Monell* for Ms. Barnett's continued detention pursuant to the eight-hour mandatory hold policy.

### III

We reverse the district court's grant of summary judgment on Ms. Barnett's Fourth Amendment detention claim against the Sheriff under *Monell* and remand for a trial on that claim.  In all other respects, we affirm.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

25