[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14723

_____

LORI SENE SORROW,

Plaintiff-Appellant,

*versus*

CITY OF ATLANTA,

Defendant-Appellee,

MICHAEL NAGY, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-02908-MLB

_____

Before WILLIAM PRYOR, Chief Judge, LUCK, and ED CARNES, Circuit
Judges.

PER CURIAM:

Lori Sene Sorrow filed suit under 42 U.S.C. section 1983
alleging that the City of Atlanta and three city officials—Michael
Nagy, Scott Banks, and Philip Proctor (collectively, the individual
defendants)—violated her constitutional rights by targeting her for
violations of the city's building code.  The two claims at issue on
appeal, a Fourth Amendment unreasonable search and seizure
claim against all defendants (count one), and a Fourth Amendment
failure to train claim against the city (count three), involve an
administrative search warrant that was executed on Sorrow's
home.  Sorrow argues that the district court erred in: (1) dismissing
count one as to the individual defendants on qualified immunity
grounds; (2) granting the city's motion for judgment on the
pleadings as to count one; and (3) dismissing count three.  After
review, we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

We draw the following factual background from Sorrow's second amended complaint, the operative pleading in this action. Sorrow has resided in a 1930s-era bungalow in Atlanta's Home Park neighborhood since 1996. Sorrow jointly owns the property and has made numerous repairs and improvements to it. The city and a neighbor made inquiries about certain repairs and an issue with Sorrow's land in 2003, 2008, and 2010. In each instance, Sorrow received confirmation from the city that her property complied with city codes.

In 2010, Sorrow obtained a general repair permit, valid for one year, and made various repairs, including to the roof and attic of her home. A neighbor complained in 2011 that Sorrow was adding a second story. However, when the city inspected the property in January and November of 2012, it found no building code violations.

In December 2013, developer 380 Properties, LLC acquired two properties adjacent to Sorrow's home. Despite opposition from Sorrow and other community members, the properties were rezoned for the development of a hotel. Later, 380 Properties sued Sorrow regarding property rights to an alley between her home and the proposed hotel site. Sorrow counterclaimed, asserting various easements and prescriptive rights.

To defeat Sorrow's counterclaims, 380 Properties began lobbying the city to bring code violations against Sorrow.

Although city officials only visited Sorrow's property approximately six times from 1990 to 2013, they made approximately thirty-two visits from 2013 to 2015. Sorrow was issued four citations for alleged code violations from March 2014 to April 2015. The latter three citations were issued at the direction of Nagy, who was then interim director of the city's Bureau of Buildings. Sorrow pleaded no contest to the first citation, and the others were eventually dismissed with prejudice.

In August 2015, the city applied for an administrative search warrant on Sorrow's home to seek evidence of an illegal second story addition and in support of the citations. At Nagy's direction, Banks and Proctor—code enforcement officials for the Bureau of Buildings—made alleged misrepresentations to the municipal court in applying for the warrant. Specifically, Banks and Proctor: (1) omitted that a complaint about an illegal second story had previously been filed in 2011, but no violations were found when the city inspected the property in 2012; (2) "improperly cited 2012 building code violations on alleged work that occurred prior to 2012;" (3) "lied to create a false sense of urgency" by claiming occupants of the building could be in danger; and (4) "falsely contended that the alleged second story impinged upon the alley, the rights to which are in dispute between Plaintiff and 380 Properties."

Before the warrant was executed, an Atlanta Police Department code compliance officer visited Sorrow's property in relation to a complaint by 380 Properties about an attic door. The

officer determined that the attic door was compliant. The officer's supervisor stated in an email that the officer had also been asked to look for other code compliance issues and found none.

The city executed the administrative search warrant one day after it expired. Banks, Proctor, and other officials took numerous photographs of the interior of Sorrow's home and did not perform a structural analysis. Sorrow later obtained a municipal court order suppressing this evidence and requiring the city to turn over the photographs. However, the city returned only a few of the images.

Sorrow initially filed suit under 42 U.S.C. section 1983 against only the city. In her first amended complaint, she alleged claims for unreasonable search and seizure, failure to train, selective prosecution, and malicious prosecution. The district court granted the city's motion to dismiss all claims except count one, the unreasonable search and seizure claim based on the administrative search warrant. Relevant here, the district court dismissed the failure to train claim in count three because Sorrow failed to show that the city's need for training with respect to administrative search warrants was obvious. As to count one, the city argued that the search was not unreasonable merely because the warrant had expired. But the district court observed that Sorrow had also claimed the city had obtained the warrant based on false representations and omissions, and it therefore concluded she had stated a Fourth Amendment claim.

Sorrow filed her second amended complaint, repleading the same claims and adding the individual defendants to all but the

failure to train claim in count three. The individual defendants moved to dismiss on statute of limitations and qualified immunity grounds, attaching the administrative search warrant and Banks and Proctor's affidavits to their motion.

The district court granted the individual defendants' motion to dismiss. First, the district court concluded that all claims (except the unreasonable search and seizure claim in count one) were dismissed for the same reasons as before. Second, the district court concluded that count one was barred by the statute of limitations to the extent it was based on the execution of the administrative search warrant, but not to the extent it was based on alleged false statements and the omission. Third, the district court concluded that the individual defendants were entitled to qualified immunity because the affidavits supported a finding of probable cause regardless of the misrepresentations and the omission alleged in Sorrow's second amended complaint. Notably, Banks and Proctor "averred that, in 2015, they conducted a visual inspection of the exterior of the home and saw a second story for which no one had obtained the necessary approval and permit."

The district court later granted the city's motion for judgment on the pleadings as to count one. The district court concluded that because Nagy was entitled to qualified immunity, and Sorrow's municipal liability claim was based solely on his actions as an official policymaker, the city could not be held liable for Nagy's conduct. This appeal followed.

## STANDARD OF REVIEW

We review the district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo, "accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

We likewise review de novo a district court's entry of judgment on the pleadings, accepting the facts of the complaint as true and viewing them in the light most favorable to the nonmoving party. *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quotation marks omitted).

## DISCUSSION

### Dismissal of count one on qualified immunity grounds

Sorrow first contends that the district court erred in granting the individual defendants' motion to dismiss count one on qualified immunity grounds because she plausibly alleged the individual defendants violated her Fourth Amendment rights when they made false statements in their affidavits for the administrative

search warrant.  She argues that the district court ignored her well pleaded allegations and made improper factual findings.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).  To receive qualified immunity, government officials must first establish that they were acting within the scope of their discretionary authority when the alleged wrongful conduct occurred.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  There is no dispute that the individual defendants were acting within the scope of their discretionary authority when they applied for the administrative search warrant. Therefore, to overcome the individual defendants' qualified immunity defense, the burden shifted to Sorrow to show:  (1) the individual defendants violated a constitutional right, and (2) the violated right was clearly established.  *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

Although the defense of qualified immunity is typically addressed at the summary judgment stage, it may be raised and considered upon a motion to dismiss.  *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  A motion to dismiss on qualified immunity grounds "will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (quotation marks omitted); *see also Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) (stating that at the motion to

dismiss stage, "the qualified immunity inquiry and the [r]ule 12(b)(6) standard become intertwined" (quotation marks omitted)).

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a search warrant violates the Fourth Amendment if the affidavit supporting the warrant contains statements that are deliberately false or made with reckless disregard for the truth and such statements are necessary to a finding of probable cause. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). The rule in *Franks* also extends to omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit" if the inclusion of such omissions "would have prevented a finding of probable cause." *Id.* at 1326–27 (quotation marks omitted). If the allegedly false material is set aside, and "there remains sufficient content in the warrant affidavit to support a finding of probable cause," the warrant is valid. *Id.* at 1326 (quoting *Franks*, 438 U.S. at 171); *see also Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002) (explaining that a "warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause"), *abrogated on other grounds by Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945 (2018).

The district court did not err in dismissing count one on qualified immunity grounds because, in view of Banks and Proctor's affidavits, there was probable cause for the search despite the alleged false statements. As an initial matter, we note that the district court properly considered the warrant affidavits attached to

the individual defendants' motion to dismiss, and we may do the same. Ordinarily, a district court must convert a motion to dismiss under rule 12(b)(6) into a motion for summary judgment if it considers materials outside the pleadings. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also St. George*, 285 F.3d at 1337. However, the district court may consider an extrinsic document without converting a motion to dismiss into one for summary judgment if the document is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings*, 600 F.3d at 1337.

In count one, Sorrow alleged that Banks and Proctor, under Nagy's direction, violated her Fourth Amendment rights by submitting affidavits for the administrative search warrant that contained "false statements and material omissions designed to deceive and mislead the Municipal Court of Atlanta into believing that probable cause existed as to alleged code violations" at her home. The affidavits are thus central to Sorrow's claim, and Sorrow does not dispute their authenticity, such that they may be considered without converting the individual defendants' motion to dismiss to one for summary judgment.

To determine whether Sorrow plausibly alleged a Fourth Amendment violation, we must determine whether the affidavits support a finding of probable cause notwithstanding the portions challenged by Sorrow. *See Madiwale*, 117 F.3d at 1326–27. Turning to the affidavits, Banks and Proctor averred that in May 2015, they made an exterior inspection of Sorrow's home and

discovered two violations of the 2012 building code: (1) a violation of section 103.1, failure to secure approved plans for the addition of a second story, and (2) a violation of section 104.4, failure to secure a building permit for the construction of the second story. Further, they stated that the code violations "likely compromised the interior structure" of Sorrow's home, which could "likely present conditions that could result in immediate danger" to occupants. The affidavits also stated that the code violations, and other uncited violations, had not been corrected and were still outstanding. Based on this information, the municipal court judge concluded that Sorrow's home had been "modified into a two-story structure without proper permits," and was in violation of the cited provisions of the building code.

Turning to the second amended complaint, Sorrow identified one omission and three false statements in relation to Banks and Proctor's application for the warrant. She alleged that they: (1) omitted the fact that the city found no illegal second story when it twice inspected her property in 2012; (2) "improperly cited 2012 building code violations on alleged work that occurred prior to 2012;" (3) made false claims that occupants of the building were in danger; and (4) "falsely contended that the alleged second story impinged upon the alley."

As the district court did, we conclude that even when these alleged misrepresentations are removed from the affidavits, and the alleged omission included, "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *See*

*Madiwale*, 117 F.3d at 1326 (quoting *Franks*, 438 U.S. at 171). Therefore, Sorrow has failed to plausibly allege a Fourth Amendment violation based on the administrative search warrant, and the individual defendants are entitled to qualified immunity. *See St. George*, 285 F.3d at 1337; *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.").

Significantly, none of the alleged misrepresentations undermine Banks and Proctor's assertion that in May 2015, they personally inspected the exterior of Sorrow's home and observed code violations based on the construction of a second story, which supports the municipal court's finding of probable cause.[1] Including the alleged omission of the fact that there was no code violation in 2012 has no impact on what Banks and Proctor said

---

[1] The parties do not address the requisite level of probable cause for an administrative search warrant. We note that in general, administrative search warrants require a lesser showing of probable cause than criminal search warrants and may be obtained upon "a showing of specific evidence sufficient to support a reasonable suspicion of a violation." *W. Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 958 (11th Cir. 1982) (discussing inspection warrant obtained by the Occupational Safety and Health Commission); *cf. United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (stating probable cause to support a criminal search warrant "exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place" (quotation marks omitted)).

they observed in May 2015, when they conducted their exterior inspection of Sorrow's home. Similarly, excluding the alleged misrepresentations concerning the potential danger to occupants does not affect Banks and Proctor's statement that they observed a second story, constructed in violation of two city building codes, in May 2015. The alleged misrepresentation that the second story "impinged upon the alley" is not contained in the affidavits, but instead stated in the warrant itself. Sorrow argues it is reasonable to infer Banks and Proctor communicated this statement to the municipal court judge during a bench conference. But even so, there was probable cause to issue the warrant without this statement.

The other alleged misrepresentation concerning improper citation to "2012 building code violations on alleged work that occurred prior to 2012" does not accurately reflect what the affidavits say. The affidavits make no mention of work that occurred prior to 2012, and instead state that Banks and Proctor observed violations of the 2012 building code when they conducted their exterior inspection in May 2015. Because none of the alleged misrepresentations in the second amended complaint were necessary to a finding of probable cause, and because including the alleged omission would not have prevented a finding of probable cause, Sorrow failed to assert a Fourth Amendment violation under *Franks*. *See Madiwale*, 117 F.3d at 1326–27.

Sorrow argues that she did challenge "whether there existed a second story on the house . . . or whether, if it existed, it was

permitted," and that a false statement about the existence of a second story "would have eliminated any possible finding of probable cause." In support of this argument, Sorrow notes that she: (1) alleged in her second amended complaint that there was no second story being added to her home in 2012; (2) argued in her response to the city's motion for judgment on the pleadings that there never had been a second story on her home; and (3) repeatedly referred to an "alleged" second story in the second amended complaint, thereby raising "the issue of whether the affiants falsely swore that they had observed a second story." But what Sorrow argued in response to the city's motion is immaterial to what she pleaded, and the other allegations she mentions, even when viewed in the light most favorable to her, do not support a plausible inference that Banks and Proctor made a deliberate or reckless misrepresentation about the existence of a second story in order to obtain the administrative search warrant.

Sorrow also contends that the district court engaged in improper fact-finding in ruling on the motion to dismiss, finding that Banks and Proctor saw a second story on her home and made no misrepresentations in their affidavits. The district court, however, did not make any such findings and expressly noted it had found only that "the search warrant affiants alleged there was an improper second story when they conducted a visual inspection of Plaintiff's house in the weeks before obtaining the 2015 warrant." We too make no determination as to the truth of Banks and Proctor's assertion about what they saw. Instead, we merely

conclude that this assertion supported a finding of probable cause and was not one of the alleged misrepresentations in the second amended complaint.

In further support of her argument that she plausibly alleged a Fourth Amendment violation in count one, Sorrow notes that when she alleged the same claim (against the city alone) in her first amended complaint, the district court allowed the claim to proceed. Unlike the individual defendants, however, the city did not—and could not—assert a qualified immunity defense, and it sought dismissal on different grounds. Thus, the district court's ruling that Sorrow had stated a claim against the city in her first amended complaint did not preclude it from subsequently ruling, in view of the affidavits, that the individual defendants were entitled to qualified immunity.[2]

### Judgment on the pleadings as to count one

Sorrow contends that because the individual defendants are not entitled to qualified immunity on count one, the district court's order granting the city's motion for judgment on the pleadings as to count one should also be reversed. She argues that the district

[2] Having found Sorrow failed to plausibly allege a Fourth Amendment violation based on the administrative search warrant, we do not reach her arguments that, in the event of reversal, she should be allowed leave to file a third amended complaint and her claim for attorney's fees should be reinstated.

court made the same improper factual findings in ruling on the city's motion for judgment on the pleadings and incorporates her prior arguments regarding the dismissal of count one as to the individual defendants.

The district court did not err in granting the city's motion for judgment on the pleadings, and Sorrow's arguments fail for the reasons set forth above.  To state a claim for municipal liability under section 1983, Sorrow was required to show:  "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  "Even in the absence of an express policy or custom, a local government body can be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision."  *Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 968 (11th Cir. 2002) (quotation marks omitted).

Although a municipality may be liable for a constitutional violation even when an individual defendant is not, *Barnett v. MacArthur*, 956 F.3d 1291, 1301 (11th Cir. 2020), *cert. denied sub nom. Lemma v. Barnett*, 141 S. Ct. 1373 (2021), that is not the case here.  The alleged municipal liability claim in count one was based solely on Nagy's actions as a final policymaker for the city as to building code enforcement.  Because Sorrow failed to plausibly allege that Nagy in his individual capacity violated her Fourth

Amendment rights, the city likewise cannot be held liable for Nagy's conduct.

*Dismissal of count three*

Sorrow also argues the district court erred in dismissing count three—her failure to train claim against the city—because there was an obvious need for the city to provide training with respect to the execution of administrative search warrants and because no discovery had occurred.

As noted above, the second element of municipal liability under section 1983 requires "a custom or policy that constituted deliberate indifference to [a] constitutional right." *McDowell*, 392 F.3d at 1289. To establish deliberate indifference based on a failure to train, a plaintiff must show that the municipality knew of the need for training in a particular area and "made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

"[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). However, the Supreme Court has left open the possibility that in a narrow range of circumstances, the need for training may be "so obvious" as to establish deliberate indifference even without a pattern of unconstitutional conduct. *See Gold*, 151 F.3d at 1352 (citing *City*

of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)); see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 409 (1997) (explaining that in some circumstances, "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations").

The district court did not err in dismissing count three of the second amended complaint because Sorrow failed to adequately allege the city's need for training was obvious with respect to the execution of administrative search warrants for residences. Count three is based on a single incident—the execution of the administrative search warrant on Sorrow's home—rather than a pattern of unconstitutional conduct. Sorrow alleged city officials displayed a lack of adequate training because: (1) they executed the warrant one day after it expired, and (2) when ordered to do so by the municipal court, they refused to turn over numerous photographs of the interior of Sorrow's home taken during the search. Sorrow also alleged that the city rarely executed administrative search warrants on private residences, and that it had searched only one other property in the two years prior to the search of her home.

Yet there are no allegations that the city's need for training with respect to administrative search warrants was so obvious that the city's failure to provide such training amounted to deliberate indifference. To the contrary, Sorrow's allegation that residential searches were a rarity undermines any claim that the need for

training in this area was obvious. *Cf. Canton*, 489 U.S. at 1205 n.10 (noting the use of deadly force as an example of an area where the need for training is obvious because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons"); *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1172 (11th Cir. 1995) (stating that the need for specialized training may be obvious where employees "face clear constitutional duties in recurrent situations"). Finally, it was not error for the district court to dispose of Sorrow's failure to train claim at the motion to dismiss stage. *See, e.g., Weiland*, 792 F.3d at 1328–29 (affirming dismissal of failure to train claim where plaintiff failed to allege the need for specialized training was so obvious that lack of training constituted deliberate indifference).

## CONCLUSION

For the reasons above, we affirm the district court's dismissal of count one against the individual defendants on qualified immunity grounds, its order granting the city's motion for judgment on the pleadings as to count one, and its dismissal of count three against the city.

**AFFIRMED.**